**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NORMAN REID,

        Petitioner,

        v.

MICHELLE RICCI, et al.,

        Respondents.

Civil Action No. 07-4289 (MLC)

**O P I N I O N**

**APPEARANCES:**

NORMAN REID, Petitioner pro se, Prison #289101 SBI #653684B
New Jersey State Prison, P.O. Box 861, Trenton, New Jersey 08625

ROBERT A. DIBIASE, ESQ., OFFICE OF THE OCEAN COUNTY PROSECUTOR
119 Hooper Avenue, Toms River, New Jersey 08753
Counsel for Respondents

**COOPER,** District Judge

    Petitioner, Norman Reid, a state prisoner currently confined at the New Jersey State Prison in Trenton, New Jersey, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his New Jersey state court sentence. The named respondents are Prison Administrator Michelle Ricci Ortiz and the New Jersey Attorney General. For the reasons stated herein, the petition will be denied for lack of substantive merit.

**I. BACKGROUND**

    Reid was indicted by an Ocean County Grand Jury on September 26, 1995, on charges of murder, possession of a weapon for an unlawful purpose, possession of a handgun without a permit, and possession of a firearm by a convicted felon. He was tried by a jury in January 1997, on the first three counts. The charge of

possession of a firearm by a convicted felon was severed from the trial.  The jury acquitted Reid on the charge of murder, but found him guilty of aggravated manslaughter, and the two weapons charges.  Reid then pleaded guilty to the severed count of possession of a weapon by a convicted felon.

Reid was sentenced on March 21, 1997.  The State moved to have Reid sentenced to an extended term because he was a persistent offender.  The State's motion was granted, and the sentencing court imposed a prison term of life with a 25-year parole ineligibility period as to Reid's conviction for aggravated manslaughter.[1]  A consecutive term of ten years in prison with a five-year period of parole ineligibility was imposed on the conviction for possession of a firearm by a convicted felon.  Consequently, the aggregated sentence was life imprisonment with a 30-year period of parole ineligibility.

Reid appealed his conviction and sentence to the New Jersey Appellate Division.  On July 1, 1999, the Appellate Division affirmed the convictions, but remanded the matter for resentencing.  The New Jersey Supreme Court denied certification on October 25, 1999.  On November 25, 1999, Reid filed a petition for post-conviction relief ("PCR") in state court, alleging prosecutorial misconduct and ineffective assistance of counsel.  The state PCR petition was denied on December 8, 2000.  Reid appealed from the

---

[1]  The other weapons charges were merged into the aggravated manslaughter conviction for purposes of sentencing.

court's decision, and the Appellate Division affirmed denial of the PCR petition on November 26, 2003.

On December 8, 2000, the trial court on remand also re-sentenced Reid to the same sentence as earlier imposed. The court noted that at the time of the original sentencing, the court would have imposed the same sentence irrespective of any presumptive term. On June 28, 2004, the Appellate Division granted leave nunc pro tunc for Reid to appeal his resentencing of December 8, 2000. This appeal was pending when the New Jersey Supreme Court rendered its opinion in State v. Natale, 184 N.J. 458 (2005). Consequently, on September 22, 2005, the Appellate Division again remanded the matter for a sentence rehearing pursuant to the Natale decision.

A resentencing hearing was held, and on November 10, 2005, and the same sentence was imposed on this second remand. Reid appealed, and the Appellate Division affirmed the resentence on June 19, 2006. The New Jersey Supreme Court denied certification on September 27, 2006. The United States Supreme Court denied Reid's petition for certiorari on April 16, 2007. Reid then filed this habeas petition on or about September 4, 2007.

On April 4, 2008, the State responded to the petition. Reid filed his objections to the State's response on May 20, 2008. He then moved to stay these habeas proceedings on May 21, 2008. Reid filed a supplemental letter brief in support of his motion

3

for a stay on June 20, 2008.  On December 29, 2008, this Court denied Reid's request to stay this matter because the claims asserted had been adjudicated in state court, and Reid did not indicate any further issues that would require exhaustion in state court before review of his federal habeas petition.[2]

## II.    STATEMENT OF CLAIMS

Reid raises the following claims for habeas relief:

Ground One: Petitioner's extended-term sentence violates the Sixth Amendment because it was based on a fact, other than a prior conviction, not found by a jury beyond a reasonable doubt.

Ground Two: Petitioner's ordinary-term sentence violates the Ex Post Facto Clause of the United States Constitution.

The State filed an answer contending that the petition is without merit and should be denied for failure to show a federal constitutional deprivation.  The State also contends that the petition is time-barred, but offers no factual argument for this defense.  This Court finds, based on the procedural history set forth by Reid and the State, that the petition is timely.

## III.    STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429

---

[2] Reid had filed a state PCR petition on or about February 11, 2008, but the state court denied the PCR petition on March 26, 2008, on the ground that the claims raised were procedurally barred pursuant to N.J.Ct.R. 3:22-5 because they were expressly adjudicated on the merits in a prior proceeding.

U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989).  Because Reid is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>    (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>    (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first

5

clause, or condition, is referred to as the "contrary to" clause. The second condition is the "unreasonable application" clause. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). In the "contrary to" clause, "a federal habeas court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case." Id. Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. Id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims. First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it

6

resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  Id.  AEDPA prohibits such de novo review.  Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  Id.  Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  Id.; see Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002).  As to claims presented to, but not adjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000); Purnell v. Hendricks, 2000 WL 1523144, at *6 n.4 (D.N.J. 2000).

7

Federal courts are required to apply a presumption of correctness to factual determinations made by the state court. See 28 U.S.C. § 2254(e)(1). This presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196. Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

### IV. ANALYSIS

**A.   Extended Term Claim**

In his first claim for habeas relief, Reid asserts that his extended term sentence violates the Sixth Amendment because it was based on a fact, other than a prior conviction, not found by a jury beyond a reasonable doubt. Specifically, Reid contends that his extended term was imposed because the sentencing judge found that it was necessary for the protection of the public and not because Reid was a persistent offender. This finding of fact, Reid claims, should have been made by the jury beyond a reasonable doubt and not the judge.

The State counters that Reid's extended term does not violate the Sixth Amendment. The State argues that Reid's extended term sentence has been affirmed at every level of the state court, and his petition for certiorari to the United States Supreme Court was denied after the cases on which he relied in his petition

were decided. The State contends that there is no merit to Reid's interpretation of Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), State v. Natale, 184 N.J. 458 (2005), State v. Pierce, 188 N.J. 155 (2006), or N.J.S.A. § 2C:44-3a, and thus, his extended term sentence should remain undisturbed. The State also contends that the extended term was properly imposed because Reid was a persistent offender.

After careful review of the state court record and relevant case law, this Court finds no merit to Reid's claim. Reid concedes that the sentencing court found him to be a persistent offender, having had at least two prior convictions (Reid admits that, in fact, he had four convictions). However, Reid insists that the provision of persistent offender statute under which he was sentenced, N.J.S.A. § 2C:44-3a, requires the sentencing judge to find that Reid is a persistent offender with at least two prior convictions within the specified time limits AND that an extended term is necessary for the protection of the public. (See Petition, ¶ 12A).

The State correctly points out that the statute does not require both findings before an extended term sentence can be imposed. Specifically, the statute reads, in pertinent part:

> The court may, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime of the first, second or third degree to an extended term of imprisonment if it finds *one or more* of the grounds specified in subsection a., b., c., or f. of this section.

9

> ...  The finding of the court shall be incorporated in the record.
>
> a.  The defendant has been convicted of a crime of the first, second or third degree and is a persistent offender. A persistent offender is a person who at the time of the commission of the crime is 21 years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced.

N.J.S.A. § 2C:44-3a.

The New Jersey Supreme Court later interpreted the statute's language to mean that "a sentencing court does not engage in impermissible fact-finding when it assesses a prior record of convictions and determines that a defendant is statutorily eligible for a discretionary extended term as a persistent offender." State v. Pierce, 188 N.J. 155, 158 (2006).  The court further held that any additional fact-finding performed by a sentencing court pursuant to State v. Dunbar, 108 N.J. 80 (1987) and State v. Pennington, 154 N.J. 344 (1998), which included the consideration of the "need to protect the public," were not prerequisites to imposing an extended term sentence on a defendant who was found to be a persistent offender.  Pierce, 188 N.J. at 161-62, 166-67.

> Specifically, the New Jersey Supreme Court ruled:
>
> Dunbar's reference to a finding of "need to protect the public" is not a precondition to a defendant's eligibility for sentencing up to the top of the discretionary extended-term range.   ...

10

> The court may consider the protection of the public when assessing the appropriate length of a defendant's base term as part of the court's finding and weighing of aggravating factors and mitigating factors.  The finding is not a necessary condition, however, to the court's determination whether defendant is subject to a sentence up to the top of the extended-term range.  Thus, we rid our sentencing practice of any ambiguity suggestive of a Sixth Amendment transgression by means of a remedy that preserves what, we believe, the Legislature would prefer-keeping the exercise of sentencing discretion in the hands of courts, not juries.

Pierce, 188 N.J. at 169-70 (internal quotes and citations omitted).

Accordingly, this Court finds that the Pierce decision is dispositive of Reid's claim, and that it does not contravene, as suggested by Reid, the extended-term sentencing statute or the Supreme Court decisions in Apprendi or Blakely as argued by Reid. Rather, the Pierce decision modified earlier case law, such as Dunbar and Pennington, which interpreted the persistent offender statute at N.J.S.A. § 2C:43-3(a), to comport with the original language of the statute.  This modification comports with the Supreme Court rulings in Apprendi and Blakely because it does not involve any judicial fact-finding in the imposition of an extended term other than the issue of prior convictions.

Moreover, this Court rejects Reid's argument that "if the sentencing judge had not made the finding that the protection of the public was warranted, the maximum sentence Reid would have been subjected to was 30 years, not life imprisonment."  (Pet. Mem. at p. 16).  The Appellate Division remarked in its June 19, 2006 Opinion that the extended term for aggravated manslaughter

11

did in fact carry a presumptive term of life imprisonment under N.J.S.A. § 2C:44-1f(1).  (See 6-19-2006 App. Div. Op., Resp.'s Ex. 2 ("R-2"), at page 3).  Therefore, Reid's claim that his extended term violates the Sixth Amendment is without merit.

**B.   Ordinary Term Sentence**

Reid argues that his ordinary-term sentence violates the Ex Post Facto Clause of the United States Constitution.  In 2005, the Appellate Division remanded this matter for resentencing in accordance with Natale, which had been published at the time Reid's appeal from his sentence was pending.  In Natale, the New Jersey Supreme Court said:

> An ex post facto penal law is defined by "two critical elements ...: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender by it." Weaver [v. Graham], 450 U.S. [24], 29 [](footnote omitted), see also Dobbert v. Florida, 432 .S. 282, 294 [] (1977)("It is axiomatic that for a law to be ex post facto it must be more onerous than the prior law."); Fortin, supra, 178 N.J. at 608, 843 A.2d 974.  There is "no ex post facto violation ... if the change in the law is merely procedural and does 'not increase the punishment, not change the ingredients of the offence or the ultimate facts necessary to establish guilt.'" Miller v. Florida, 482 U.S. 423, 433 [](1987)(quoting Hopt v. Utah, 110 U.S. 574, 590 [] (1884)).

184 N.J. at 490.

This Court finds that Reid's claim regarding his ordinary term is not violative of the ex post facto clause or the Sixth Amendment as asserted.  Reid was not subjected to a more onerous sentence on remand.  Moreover, this Court finds that the state court's adjudication of his claim did not result in a decision

that was contrary to, or involved an unreasonable application of, clearly established federal law.  Specifically, the Appellate Division said, pursuant to Natale:

> [T]he trial court [had to] determine whether the absence of the presumptive term in the weighing process requires the imposition of a different sentence.  The court should not make new findings concerning the quantity or quality of aggravating and mitigating factors previously found.  Those determinations remain untouched by this decision.  Because the new hearing will be based on the original sentencing record, any defendant challenging his sentence on Blakely grounds will not be subject to a sentence greater than the one already imposed.
>
> [Id. at 495-96.]
>
> The remand judge carefully reviewed the record which, among things, revealed the consideration of the presumptive sentence under N.J.S.A. 2C:44-1f and that the original sentencing judge found that the aggravating factors outweighed the non-existent mitigating factors and considered the Dunbar criteria for imposition of an extended term.  See State v, Dunbar, 108 N.J. 80 (1987).  The remand judge then noted:
>
>> The [original sentencing judge] then went on to articulate the aggravating factors, found aggravating factor three, the risk the defendant would commit another offense; aggravating factor six, mindful that the prior record would not be given the same qualitative weight.  In fact, the Court gave it minor weight but articulated under Dunbar it could assess the defendant [] as [an] individual in terms of past behavior, performances on Probation, particularly in this case as a juvenile.  The Court noted parenthetically that in its experience it was probably one of the longest juvenile records the Court had experienced with involvement in the criminal justice system of this defendant dating back to nine years of age.  The Court noted the incarcerations of Mr. Reid as a juvenile as well as for incarcerations for prior adult offenses.  The Court went on and gave, quote, "very heavy weight," unquote, to each of those aggravating factors and noted the defendant was only out a matter of months from State Prison when he committed the homicide offense in the case at hand.  The Court noted prior prison sentences and violations of Probation failed to deter Mr.

```
     Reid and made a determination that the defendant posed a
     threat to the public under the circumstances.

          Finally the record revealed that the [original judge]
     weighed and considered the intent of the Legislature with
     respect to the offenses such as knowing and purposeful
     murder which cold impose life with no parole for thirty.
     That coupled with the intent of the Graves Act as a weapon
     was involved was also considered and factored in by the
     Court.

The court also referred to the basis for the consecutive
sentence of ten years with five years before parole
eligibility for the conviction of possession of a weapon by
a convicted felon, and concluded:

          Based on the directive under Natale it is this Court's
     finding that a review of the record before the Trial Court
     who sentenced Mr. Reid and without disturbing the
     quantitative or qualitative findings by the Trial Court of
     the aggravating and mitigating factors, the absence of the
     presumptive in the weighing process does not require the
     imposition of a different sentence.  A fair reading of the
     record indicates that [the judge's] sentence was not based
     upon the fact that it was the presumptive term but rather
     that the maximum sentence after weighing the aggravating and
     mitigating factors militated in favor of the sentence which
     was eventually handed down.

          So, accordingly, the sentence of the Trial Court as
     articulated by [the original judge] will be reimposed.  An
     Order will be prepared -- amended Judgment will be prepared
     accordingly.

On this appeal we must recognize the scope of review
addressed in Natale:

          Although judges will continue to balance the
     aggravating and mitigating factors, they will no longer be
     required to do so from the fixed point of a statutory
     presumptive.  We suspect that many, if not most, judges will
     pick the middle of the sentencing range as a logical
     starting point for the balancing process and decide that if
     the aggravating and mitigating factors are in equipoise, the
     midpoint will be an appropriate sentence.  That would be one
     reasonable approach, but it is not compelled.  Although no
     inflexible rule applies, reason suggests that when the
     mitigating factors preponderate, sentences will tend toward
```

the lower end of the range, and when the aggravating factors preponderate, sentences will tend toward the higher end of the range.  In the past, defendants with long criminal records have been sentenced toward the upper part of the sentencing range. They should not anticipate a departure from that practice with the presumptive terms gone.

As always, every judge must "state on the record" how he or she arrived at a particular sentence.  N.J.S.A. 2C:43-2(e); see also R. 3:21-4(g)("[T]he judge shall state reasons for imposing [a] sentence including ... the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence.").  We are confident that the judge's obligation to justify the sentence by referencing the mitigating and aggravating factors will continue to bring rationality to the process and minimize disparate sentencing.

The touchstone is that the sentence must be a reasonable one in light of all the relevant factors considered by the court.  As before, trial judges still must identify the aggravating and mitigating factors and balance them to arrive at a fair sentence.  See [State v.]Hodge, [], 95 N.J. [369], 379-80, 471 A.2d 389 [(1984)].  Because we expect that judges will perform their duties conscientiously, we do not foresee a major change in sentencing patterns as a result of the removal of presumptive terms.

Under today's holding, appellate courts will continue to play "a central role" in carrying out the Code's goals of "promoting uniformity and consistency" in sentencing.  State v. Jarbath, 114 N.J. 394, 400, 555 A.2d 559 (1989). Sentencing decisions will continue to be reviewed under our established appellate sentencing jurisprudence.  Appellate courts must determine whether the sentencing court followed the applicable sentencing guidelines. [State v.]Roth, 95 N.J. [334,] 364-65, 471 A.2d 370 [(1984)].

As we recently explained in [State v.]Evers, []"when reviewing a trial court's sentencing decision, '[a]n appellate court may not substitute its judgment for that of the trial court.'"  175 N.J. [355,] 386, 815 A.2d 432 [(2003)](quoting State v. Johnson, 118 N.J. 10, 15, 570 A.2d 395 (1990)); see also Roth, supra, 95 N.J. at 365, 471 A.2d 370.  Our "appellate courts are expected to exercise a vigorous and close review for abuses of discretion by the trial courts." Jarbath, supra, 114 N.J. at 401, 555 A.2d

>559. However, they are "bound to affirm a sentence, even if [they] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215, 564 A.2d 1202 (1989); see also Roth, supra, 95 N.J. at 364-65, 471 A.2d 370 (holding that appellate court may not overturn sentence unless "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience").
>
>[Natale, supra, 184 N.J. at 488-89.]
>
>We recognize that the sentence under review gives deference to the original sentencing court, but it also complied with the dictates and principles of Natale. The judge noted, as did the original resentencing judge in 1997, that the presumptive term was not dispositive. We also recognize that a sentence of life imprisonment with twenty-five years before parole eligibility for aggravated manslaughter is not that different than the mandatory sentence of thirty years to life, with thirty years before parole eligibility for murder. N.J.S.A. 2C:11-3b(1). But the sentence is premised on defendant's record as well as his conduct. See N.J.S.A. 2C:43-7a(1); Dunbar, supra, 108 N.J. at 94-95; State v. Candelaria, 311 N.J. Super. 437, 452 (App. Div.), certif. denied, 155 N.J. 587 (1998).* Moreover, having imposed a sentence of life imprisonment and determined that a parole ineligibility term was warranted, the parole ineligibility term had to be twenty-five years. N.J.S.A. 2C:43-76; State v. Pennington, 154 N.J. 344, 360 (1998); Candelaria, supra, 311 N.J. Super. at 452.
>
>―――――――――――――――――
>\* By age twenty-three, at the time of this offense, defendant had been convicted of four indictable transactions and sentenced to prison twice. There is no suggestion that he did not qualify as a persistent offender under N.J.S.A. 2C:44-3a, resulting in the sentence under N.J.S.A. 2C:43-7a(1).
>
>(R-2, 6-19-2006 App. Div. Op. at pp. 4-9).

Having carefully reviewed the state court record and the relevant case law, this Court finds no error in the state court rulings, as set forth above, and accordingly, will deny Reid's

claim as to his ordinary sentence for lack of merit.  Reid has not shown any constitutional violations as to his sentencing on remand that would warrant habeas relief.

### V. CERTIFICATE OF APPEALABILITY

This Court must determine whether a certificate of appealability should issue.  See 3d Cir. Local App. R. 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by Reid demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

### CONCLUSION

This Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.  An appropriate Order and Judgment follows.


    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:    July 6, 2009